STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

MOHIT GOURISARIA (CABN 320754)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (510) 637-3924
    FAX: (415) 436-7234
    Mohit.Gourisaria@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>     Plaintiff, <br>     v. <br> JOSEPH ALBERT COREY, <br>     Defendant. | NO. CR-20-481 EMC <br><br> UNITED STATES' SENTENCING MEMORANDUM <br><br> Judge: Hon. Edward Chen <br> Date: March 17, 2022 <br> Time: 9:30 a.m. |
| UNITED STATES OF AMERICA, <br>     Plaintiff, <br>     v. <br> JOSEPH ALBERT COREY, <br> a/k/a Dennis Dupont; a/k/a Dennis Dupon; a/k/a Jason Levy; a/k/a Peter Katz; a/k/a Theodore Bergstrom; a/k/a Adam Bauer; a/k/a Lawrence Greenberg; a/k/a Adam Goldberg; a/k/a David Heimlich, <br>     Defendant. | NO. CR-19-530 EMC <br><br> UNITED STATES' SENTENCING MEMORANDUM <br><br> Judge: Hon. Edward Chen <br> Date: March 17, 2022 <br> Time: 9:30 a.m. |

U.S. SENTENCING MEMORANDUM     1
CR 20-481 EMC and CR 19-530 EMC

## I. **INTRODUCTION**

Joseph Albert Corey is a serial fraudster, a man of uncountable identities, a shapeshifter. In November 2019, he pleaded guilty to a single count of mail fraud for depositing unauthorized checks (case no. 19-cr-530). Back then, he believed that the government was clueless because it had only charged him with a small fraction of his crimes; he even boasted to a co-conspirator that the FBI was the "Federal Bureau of Idiots." Then weeks before his sentencing on the mail-fraud charge — on learning that the government had evidence of far more serious crimes than the one he had pleaded guilty to — he lied to his then counsel, and, with no fear of this Court or the law, fled to Mexico with the help of the co-conspirator. It took months of planning, and coordination between the FBI and local and state Mexican law enforcement, to locate Mr. Corey. And during his time in Mexico, his surety and ex-wife, Melissa Zee, surreptitiously communicated with him, receiving money from new crimes that Mr. Corey continued to commit. During that same time, in the 20-cr-481 case, the government charged Mr. Corey with conspiracy, wire fraud, and money laundering in a sprawling medical device loan fraud scheme. True to his character, when Mr. Corey was finally arrested in Mexico last year, he was carrying several false identifications, including those identifying him as a Special Agent for the CIA.

But the false identities, fraudulent representations, and boundless greed are only part of the story. Unlike most criminal defendants who appear before this Court, Mr. Corey's background is replete with privilege and opportunity — and entitlement. The system never failed Mr. Corey. Mr. Corey did not steal because he needed money, he did not lie because he was desperate, he did not flee justice because he was wrongly pursued. If defense's letters to Probation are any indication, far from taking responsibility and expressing remorse for his crimes, Mr. Corey will downplay the severity of his conduct; petulant about getting caught, he will point his fingers at his co-conspirator. When he comes before this Court, Mr. Corey will rest on his unshakeable sense of entitlement, and nothing else, to demand that this Court impose a sentence that varies sharply from his generous Guidelines range that gives him a free pass for his mail-fraud conviction.

The seriousness of Mr. Corey's offenses, the strong likelihood of his continued recidivism, and his disdain for the Court and the law counsel a meaningful custodial sentence. A sentence of 129

months' imprisonment is sufficient, but not greater than necessary, to achieve the goals set forth in 18 U.S.C. § 3553. The government also recommends that Mr. Corey's sentence include 3 years of supervised release, a $1,000,000 fine, restitution, and the mandatory special assessment.

## II.   FACTS

### A.   Mr. Corey Committed Two Entirely Separate Sets of Fraud.

In August 2019, Mr. Corey was charged with one count of mail fraud relating to the deposit of unauthorized, fraudulent checks issued from a bank account belonging to InterContinental Hotels Group (IHG).[1] And in December 2020, Mr. Corey was charged with new — and entirely distinct — crimes stemming from a sprawling medical-device-loan scheme involving millions of dollars.

#### 1.   *Mail Fraud Conviction (19-cr-530)*

As detailed in the PSR (*see* ¶¶ 10-27), between February and April 2019, Mr. Corey engaged in a scheme to defraud victim IHG. Using the false name "Dennis Dupont," Mr. Corey opened bank accounts for two fake companies: "Medical Practice Management" and "Medtronic Inc." He then funded those accounts by depositing unauthorized checks drawn from an account owned by IHG. When a check was successfully deposited, Mr. Corey laundered the proceeds by purchasing gold coins from a precious metals company and later picked up the shipment of gold coins from rented mailboxes in the Bay Area.

 

*Mr. Corey as "Dennis Dupont" during his scheme to defraud IHG*

---

[1] 19-cr-530, Dkt 1.

U.S. SENTENCING MEMORANDUM                2
CR 20-481 EMC and CR 19-530 EMC

Most of Mr. Corey's fraudulent checks — which totaled over $370,821.07 — were flagged by the banks' fraud-detection capabilities. *Id.* But Mr. Corey successfully cashed at least one check and used the proceeds to purchase gold coins.

When the FBI searched Mr. Corey's residence in August 2019, it found, among other things, more than a dozen driver's licenses bearing Mr. Corey's photo but under false names, several counterfeit social-security cards, and nearly a dozen cell phones that were labeled to indicate the false identities to which they corresponded. A search of the phones revealed that they were logged into, or received communications from, over 20 different email accounts.

 

*These "Jason Levy" identifications were amongst dozens of false identifications recovered during the 2019 search of Mr. Corey's residence*

In November 2019, Mr. Corey pleaded guilty in an open plea to the mail-fraud charge against him, and fled to Mexico prior to his sentencing.

 2. ***Wire Fraud Convictions (20-cr-481)***

In December 2020, in a criminal case entirely distinct from the 2019 mail fraud case, Mr. Corey was charged with a sprawling, multimillion-dollar scheme to defraud medical-device lenders. He was indicted for conspiracy to commit wire fraud, three counts of wire fraud, and two counts of money laundering. As part of the wire-fraud scheme, Mr. Corey impersonated real doctors to apply for loans, purportedly for medical devices. The defrauded lenders then wired the fraudulent proceeds to bank accounts set up by Mr. Corey with names that closely resembled or were identical to that of legitimate medical-device suppliers. The proceeds were subsequently laundered through purchases of gold.



*One of the many false identities Mr. Corey assumed to commit his crimes*

As described in paragraph 2 of the parties' plea agreement and the PSR (*see* ¶¶ 28-33), Mr. Corey admitted that his role in the conspiracy included, among other things, (a) using false identities, (b) submitting loan applications, making false representations, and providing doctored documentation to lenders, and (c) renting mailbox addresses and opening sham bank accounts.² Among his many misdeeds were the following:

- In March 2019, Mr. Corey rented a mailbox in San Ramon, California under the alias Aaron Schwartz and in the name of Intuitive Holdings, LLC.

- In March 2019, Mr. Corey opened a Comerica bank account ending in 0537 under the alias Aaron Schwartz and in the name of Intuitive Holdings, LLC, using the rental mailbox in San Ramon as the mailing address.

- In April 2019, Mr. Corey submitted a fraudulent loan application to North Star Leasing Company using the stolen identity of a true doctor (Dr. D.M.). Proceeds from that fraudulent loan were received in the sham Comerica bank account ending in 0537.

- In April 2019, Mr. Corey submitted a fraudulent loan application to HomeTrust Bank using the stolen identity of a true doctor (Dr. M.M.). Proceeds from that fraudulent loan were received in

---

² Despite his detailed and clear admissions in the plea agreement, Mr. Corey, in letters written to Probation by his counsel on January 19 and February 16, 2022, sought to have his cake (receive the benefit of the plea agreement) and eat it too (make dubious, unsupported claims to minimize his culpability). *See, e.g.*, Addendum to the PSR (outlining a few of the defendant's baseless objections). In the course of this memorandum, the government will address only a few of the many fantastic arguments in those letters that it believes Mr. Corey is most likely to repeat at sentencing.

U.S. SENTENCING MEMORANDUM             4
CR 20-481 EMC and CR 19-530 EMC

the sham Comerica bank account ending in 0537.

- In April 2019, Mr. Corey submitted a fraudulent loan application to Pawnee Leasing Corporation using the stolen identity of a true doctor (Dr. I.S.). Proceeds from that fraudulent loan were received in the sham Comerica bank account ending in 0537.

- In July 2020, Mr. Corey submitted a fraudulent loan application to Crestmark Vendor Finance using the stolen identity of a true doctor (Dr. E.K.). Proceeds from that fraudulent loan were received in sham bank accounts in the name of Equicare Medical Supply Inc.

Mr. Corey has admitted that the loss amount from his scheme is over $3.5 million. According to the government's calculations (produced to defense counsel in April 2021), the total loss amount, actual and attempted, from the scheme is over $13.5 million. Mr. Corey has admitted that his scheme involved over 10 victims, and that he possessed five or more means of identification that were unlawfully produced or obtained.[3] Mr. Corey has also admitted that his scheme involved sophisticated means and that he intentionally engaged in or caused the conduct constituting sophisticated means. Perhaps most important for purposes of sentencing, Mr. Corey has admitted that he is a recidivist, that he continued to commit the offenses charged in his new case whilst on supervised release and awaiting sentencing in his old case.

  **B.**  **Whilst on Release, Mr. Corey Defied the Court, Escaped to Mexico, and Continued to Commit New Crimes.**

In February 2020, as Mr. Corey awaited sentencing for his mail fraud (to which he had entered an open guilty plea), the government sought to reopen detention, communicating to his counsel about "evidence that suggests that Mr. Mr. Corey is continuing to engage in fraudulent conduct since his arrest." 20-cr-481, Dkt. 4, Exhibit A. That hearing was initially set for February 14, 2020, but Mr. Corey's then counsel requested that the hearing be moved: "I've spoken with Mr. Corey and he would prefer the 18th as he cannot get a flight here for the 14th on such short notice," *Id*. Those additional few days were seemingly all that Mr. Corey needed to escape. He failed to appear for his bond hearing

---

[3] The government's tally shows at least a dozen victims of identity theft and, as reflected in the restitution analysis, over two dozen victims who suffered actual financial losses.

U.S. SENTENCING MEMORANDUM  5
CR 20-481 EMC and CR 19-530 EMC

before Magistrate Judge Spero on February 18, 2020.[4] The court gave him an additional day, but he failed to appear again on February 19, 2020,[5] and Magistrate Judge Spero issued a bench warrant for his arrest. Mr. Corey's sentencing before this Court, scheduled for February 26, 2020, was continued several times, and ultimately vacated.[6]

But Mr. Corey's successful escape was only the beginning. The government produced additional evidence to the defense in August 2021 (when Mr. Corey sought to reopen the issue of detention), which showed that his surety and ex-wife, Melissa Zee, aided and abetted him whilst he remained a fugitive.[7] That included communicating surreptitiously with him and sending suitcases to him in Mexico with personal effects, as well as mail and other items that enabled Mr. Corey to continue engaging in new crimes and living under false identities. In return, with the help of his co-conspirator, Mr. Corey continued sending large amounts of cash to Ms. Zee from Mexico.




*Photos of items from one of the many suitcases that Mr. Corey received whilst a fugitive in Mexico*

Finally, the fact that Mr. Corey continued to commit new crimes whilst on pretrial release in his mail-fraud case is indisputable; Mr. Corey has admitted to it in paragraph 2 of the plea agreement.[8]

---

[4] *See* 19-cr-530, Dkt 26.

[5] *See* 19-cr-530, Dkt 25.

[6] *See* 19-cr-530, Dkt 31.

[7] That discovery is contained in Bates US-015475 to US-015524, which was also produced to Probation for purposes of the PSR. If helpful, the government can make the materials available to the Court.

[8] In his January 19, 2022, letter to Probation, Mr. Corey stated that he "rejoined the conspiracy" from Mexico but claimed not to have been a part of it for the months between his arrest in 2019 and his

U.S. SENTENCING MEMORANDUM        6
CR 20-481 EMC and CR 19-530 EMC

C. **Mr. Corey Successfully Evaded Prosecution for Nearly a Year, and was Located After Substantial Law-Enforcement Efforts**

It took months of planning and preparation to locate and arrest Mr. Corey. The operation involved not only the FBI (both in the U.S. and legat) but also local and state Mexican law enforcement. As a result of those extensive cross-border efforts, Mr. Corey was finally arrested in Monterrey, Mexico, on January 13, 2021, nearly a year after he went on the lam. True to his form, at the time of his arrest, Mr. Corey had several false identifications on him, including an ID and badge identifying him as a Special Agent for the Central Intelligence Agency (CIA).

 

*The CIA identifications that Mr. Corey possessed during his January 2021 arrest in Mexico*

---

fleeing the country in early 2020. Even if that somehow justified his escape to Mexico (which it clearly does not), that claim is false. The government has produced substantial evidence in support of the charged conspiracy, including in support of the conspiracy's time frame, which Mr. Corey now appears to contest — though plainly admitting to it in the plea agreement. Whether or not Mr. Corey physically appeared at the rental mailbox to collect the proceeds of his fraud during those months of pretrial supervision (when he perhaps wisely believed he would be detected for violating his release term that he not commit new crimes), the fact remains that the medical-device loan scheme was ongoing, and that Mr. Corey continued to be a part of it.

U.S. SENTENCING MEMORANDUM       7
CR 20-481 EMC and CR 19-530 EMC

He also insisted that he was "Michael Westin" until the arresting officers made it clear that they knew exactly who he was.

 

*Mr. Corey as "Michael Westin"*

## III.  DISCUSSION

The Court must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, deter others from committing similar crimes, protect the public from the defendant, and rehabilitate the defendant. 18 U.S.C. § 3553(a)(2); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The statute sets forth several factors that the Court must consider in determining a just sentence: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the purposes of sentencing; (3) the kinds of sentences available; (4) the Guidelines range for sentences; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentencing disparities and the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a); *Carty*,

520 F.3d at 991. The Guidelines should be the starting point and the initial benchmark. *Gall v. United States*, 552 U.S. 38, 49 (2007). Though the guidelines are not binding, they "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 350 (2007).

### A. Guidelines Range

The PSR correctly calculates Mr. Corey's Criminal History Category as I.

The PSR also properly follows the Guidelines in "determining a single offense level that encompasses all the counts of which the defendant is convicted" because the Court set a consolidated proceeding to sentence Mr. Corey for his two separate set of crimes. *See* USSG Chapter 3, Part D, Introductory Commentary. That results in a total offense level of 31, which yields a Guidelines range of 108 to 135 months.[9]

This approach, however, grants an undeserved benefit to Mr. Corey. In paragraph 7 of the plea agreement in the 20-cr-481 case, the parties agreed to a total offense level of 31. In other words, the 20-cr-481 case, by itself, results in the 108-to-135-month Guidelines range — without accounting for the 19-cr-530 case at all. According to the February 2020 PSR in the 19-cr-530 case, Mr. Corey faced a Guidelines range of 21 to 27 months, and Probation had recommended that this Court sentence Mr. Corey to 21 months in prison on the mail-fraud conviction alone. *See* 19-cr-530, Dkt. 23.

By defying the Court and the law, by continuing to commit new crimes after pleading guilty in the mail-fraud case, and by successfully evading capture in Mexico for nearly a year, Mr. Corey (as far as the Guidelines are concerned) is effectively able to walk away scot-free for his earlier crime. This absurd outcome could hardly have been the intent of the Sentencing Commission. Because the Guidelines are advisory, the government requests that the Court bear this unfair advantage to Mr. Corey in mind when determining a just sentence.

---

[9] The government reserves its right to object to the offense-level decrease for clearly demonstrated acceptance of responsibility based on whether Mr. Corey, at sentencing, in fact takes responsibility for the crimes he admitted to in his open plea (in 19-cr-530) and the plea agreement (in 20-cr-481).

U.S. SENTENCING MEMORANDUM            9
CR 20-481 EMC and CR 19-530 EMC

**B.     The Government Recommends 129 Months of Imprisonment.**

The government recommends 129 months in prison for Mr. Corey. This recommendation attributes 21 months to Mr. Corey's mail-fraud crime and 108 months to his sprawling loan-fraud scheme.[10] As the PSR also reflects, there is not one mitigating factor that counsels a downward variance.

At sentencing, Mr. Corey is likely to point his fingers at co-conspirator Brian Dill. The government plans to respond to those arguments either in a supplemental memorandum prior to sentencing or at sentencing. But the evidence — unlike the unsupported, self-serving claims that Mr. Corey seems to have conjured — proves that Mr. Dill and Mr. Corey were "equals within the execution of the scheme and as having profited fairly equally." PSR ¶ 34.[11] Mr. Corey may also argue, as he did in his letters to Probation, that he should be held responsible for a loss amount far less than the "at least $3.5 million" to which he admitted in the plea agreement.

The reason Mr. Corey will focus on what is precluded (by his own admissions) or baseless and beside the point (since Mr. Dill is not the one being sentenced) is that he does not have the capacity for responsibility or remorse. As an example, in his January 2022 letter to Probation, Mr. Corey, commenting on his false IDs and CIA badges, argued — one hopes only half-seriously — that "[t]here is nothing nefarious about these stage props. Mr. Corey has always been interested in the trappings of undercover worked [sic] and has used props in his film work." Putting aside the minor fact that providing false identification to law enforcement or transporting or displaying counterfeit police badges may qualify as federal felony crimes, arguments like these illustrate an inability to show, let alone experience, remorse for criminal conduct. What Mr. Corey seems to be disgruntled about is that he was caught — a timeless gripe of the entitled fraudster.

---

[10] Mr. Corey's bail jumping and his many aggravated identity thefts, while featuring in his offense-level calculation, were left uncharged (along with several other potential crimes) and therefore do not result in mandatory consecutive sentences.

[11] In support of that understanding, the government will share with the Court via email three of the documents produced in discovery (and also made available to Probation). The first (US-015495) is a text exchange between Mr. Corey and Mr. Dill that reflects the equal nature of their relationship; Mr. Corey's ("Tex") texts are in white, and Mr. Dill's are in green. The second (US-015691) is an email from a mutual acquaintance of Mr. Corey and Mr. Dill, introducing Mr. Corey to Mr. Dill. The third (US-015552) is a text exchange between the same mutual acquaintance and Mr. Dill, discussing Mr. Corey (who goes by "Jack").

U.S. SENTENCING MEMORANDUM          10
CR 20-481 EMC and CR 19-530 EMC

If Mr. Corey had the capacity to turn over a new leaf, he would have done so after pleading guilty to the mail-fraud charge before this Court. If Mr. Corey wished to be an asset to his community, as he avowed before the magistrate court and presumably will do so again before this Court, he had over a year to prove it. Instead, he used his time to defraud new victims and commit new crimes. And his promises are just the empty words of a sophisticated fraudster.

Finally, 129 months is a just sentence within the Guidelines range that would avoid unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a)(6). According to data made available in the Sentencing Commission's JSIN platform, between 2016 and 2020, after excluding those who received a §5K1.1 substantial-assistance departure, there were 103 offenders who shared Mr. Corey's primary guideline (§2B1.1) with a final offense level of 31 and a Criminal History Category of I. All but one of those offenders received a prison sentence, 41% either within or above the Guidelines range and 59% below. The average and median length of imprisonment was 82 months and 84 months, respectively. Unlike Mr. Corey, those defendants in the dataset who received below-Guidelines sentences could presumably show mitigating factors. Here, Probation "has not identified any factors that would warrant a sentence outside the applicable advisory guideline range." PSR ¶ 108. Indeed, one would be hard-pressed to find a defendant more deserving of a Guidelines sentence than Mr. Corey. In justifying its 96-month recommendation, Probation identified only Mr. Corey's "lack of criminal history to be a mitigating factor" before qualifying even that single factor by his additional fraud and escape to Mexico. *See* PSR, Sentencing Recommendation, at 2-3. But Mr. Corey's lack of criminal history is already incorporated into his Guidelines range (which otherwise would have been meaningfully higher). To credit Mr. Corey twice for his criminal history — simply because no other redeeming factor may be found — not only is contrary to the spirit of section 3553 but also would unduly reward a sophisticated criminal who has repeatedly squandered the trust that the Court (and society) placed in him. It also signals to the public that no matter how underserving the criminal, white-collar crimes (generally committed by well-bred, upper-class professionals like Mr. Corey) will be disposed more leniently than crimes committed by those less privileged.[12]

---

[12] *See* Schanzenbach, Max. "Prison Time, Fines, and Federal White-Collar Criminals: The Anatomy of a

### C. The Government Seeks a Restitution Order of $3.49 Million.

The Mandatory Victims Restitution Act, 18 U.S.C. § 3663A, requires courts to order restitution to victims of certain criminal offenses, including bank fraud, for which an identifiable victim has suffered pecuniary loss. *See* 18 U.S.C. § 3663A(c). The defendant agreed, as part of his plea agreement in the 20-cr-481 case, "to pay restitution in an amount to be set by the Court at the time of sentencing, but in no event less than $3.5 million."[13] In post-plea discussions, both defendant and the government agreed to a restitution order in the amount of $3.5 million.

The government requests a restitution order for $3,486,222.98 to be distributed to victims in the manner specified in a spreadsheet that has been produced to Probation and defense counsel (who has no objections to it).[14]

### D. The Government Seeks a Fine of $1 Million.

Because greed and entitlement drove Mr. Corey to commit his frauds, a fair sentence would be incomplete without a monetary fine. Mr. Corey "did not return requested release forms related to employment, education, and financial verification" to Probation. *See* PSR, Sentencing Recommendation, at 2. Given his history of lies and deceit, and now his refusal to fully engage in the pre-sentencing process with Probation, the inference that Mr. Corey has not disclosed his substantial assets (whether or not held in his own name) is plain. Given the nature of his crimes, his history of extravagance (for instance, he drove a luxury Jaguar vehicle and had two apartments in San Francisco when he was being investigated in 2019), his habit of converting fraud proceeds to (literally) gold, Mr. Corey should be subject to the high-end Guidelines fine. *See, e.g.*, *United States v. Zhao*, No. 19-CR-222-JD, Dkt. 58 (despite Probation recommending no fine, imposing the high-end Guidelines fine of $150,000 fine in connection with a far less sophisticated fraud scheme with $791,401.26 in loss amount).

---

Racial Disparity." *Journal of Criminal Law and Criminology*, vol. 96, Issue 2 Winter, 2006.

[13] The government does not seek restitution in the 19-cr-530 case. (*See* PSR ¶ 27). IHG was made whole by its bank for one of the fraudulent checks that Mr. Corey successfully cashed. (*Id.*)

[14] The restitution is only for fraud victims from whom Mr. Corey stole money — and not the victims of Mr. Corey's identity theft, who do not appear to have suffered direct financial losses.

## IV. CONCLUSION

With full consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the United States respectfully requests that the Court sentence Joseph Albert Corey to 129 months' imprisonment, followed by 3 years of supervised release (with the conditions recommended by U.S. Probation). The Court should also order the agreed-upon $3,486,222.98 in total restitution, a $1,000,000 fine, and the mandatory special assessment.

DATED: March 10, 2022                                        Respectfully submitted,

                                                             STEPHANIE M. HINDS
                                                             United States Attorney


                                                             */s/ Mohit Gourisaria*
                                                             MOHIT GOURISARIA
                                                             Assistant United States Attorney