UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　Plaintiff,<br>　　v.<br>JOSPEH ALBERT COREY,<br>　　　　Defendant. | Case No. 20-cr-00481-EMC-1<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION TO REDUCE SENTENCE**<br><br>Docket No. 114 |

Currently pending before the Court is Defendant Joseph Albert Corey's motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2).[1] Having considered the parties' papers, as well as all other evidence of record, the Court hereby **GRANTS** in part and **DENIES** in part Mr. Corey's motion.

## I.    FACTUAL & PROCEDURAL BACKGROUND

The instant case is related to another criminal case, No. CR-19-0530-1 EMC (hereinafter *Corey I*). In *Corey I*, Mr. Corey was charged with mail fraud after he deposited several fraudulent checks into an account that he held and then used the fraudulently obtained funds to purchase gold coins. *See Corey I*, Docket No. 1 (complaint). In November 2019, Mr. Corey pled guilty. *See Corey I*, Docket No. 22 (application for permission to enter guilty plea and order accepting plea).

While Mr. Corey was waiting for sentencing in *Corey I*, the government sought to reopen detention based on alleged ongoing unlawful activity. A bond hearing was set for February 2020,

---

[1] Mr. Corey initially moved for relief as a pro se litigant. However, the Court subsequently appointed him counsel, and counsel filed a new motion for reduction which is now pending before the Court.

1  but Mr. Corey failed to appear. A bench warrant was therefore issued, and his sentencing was

2  continued. *See Corey I*, Docket No. 27 (stipulation and order).

3        In December 2020, while Mr. Corey was still a fugitive, a new criminal case – the instant

4  action – was initiated against him (hereinafter *Corey II*). In *Corey II*, Mr. Corey was charged with

5  one count of conspiracy to commit wire fraud, three counts of wire fraud, and two counts of

6  money laundering. As alleged in the indictment, from approximately March 2019 through

7  October 2020, Mr. Corey, along with others, had a scheme whereby they used the identity of a real

8  doctor to apply for a loan and falsely represented to the lender that the loan was for the purchase

9  of a medical device. The fraudulently obtained loan funds were deposited into accounts seemingly

10  held by legitimate medical device companies and then used to purchase gold from precious metals

11  dealers (*e.g.*, gold coins). *See* Docket No. 1 (indictment). One of the co-conspirators involved in

12  the scheme was Brian Dill. *See* Docket No. 77 (PSR ¶ 34).

13        In January 2021, Mr. Corey was arrested in Mexico. At the time of his arrest, Mr. Corey

14  had several false pieces of identification, including an ID and badge that identified him as a

15  Special Agent for the CIA. Mr. Corey also insisted that his name was "Michael Westin." *See*

16  Docket No. 77 (Amended PSR ¶ 5).

17        A joint sentencing for *Corey I* and *Corey II* was held in March 2022. For *Corey II*, Mr.

18  Corey was sentenced to 108 months of imprisonment and three years of supervised release, *see*

19  Docket No. 78 (judgment) (also providing that the 108-month term of imprisonment "shall be

20  served concurrently with the term of imprisonment imposed in [*Corey I*]"). The same sentence

21  was given in *Corey I*. *See Corey I*, Docket No. 110 (judgment) (also providing for concurrent

22  service). Subsequently, Mr. Corey was ordered to pay almost $3.5 million in restitution in *Corey*

23  *II*. *See* Docket No. 82 (amended judgment).

24        **II.**      **DISCUSSION**

25  A.    Legal Standard

26        Title 18 U.S.C. § 3582(c)(2) provides that a court may reduce a term of imprisonment "in

27  the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing

28  range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C.

994(o),"[2] so long as § 3553(a) factors support the reduction and the reduction "is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). The Sentencing Commission's reduction must also have been made retroactive. *See Dillon v. United States*, 560 U.S. 817, 824 (2010) ("Section 3582(c)(2) establishes an exception to the general rule of finality 'in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o)' and made retroactive pursuant to § 994(u).").[3]

The Ninth Circuit has explained that

> § 3582(c)(2) requires a two-step inquiry. First, a district court must determine whether a prisoner is eligible for a sentence modification under the Commission's policy statement in USSG § 1B1.10.[4] Second, a district court must "consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case."

*United States v. Dunn*, 728 F.3d 1151, 1155 (9th Cir. 2013).

B.  <u>Eligible for Sentence Modification</u>

Mr. Corey argues that he is eligible for a sentence modification based on Amendment 821 to the Sentencing Guidelines. "In November 2023 . . . , the Sentencing Commission adopted Amendment 821, which provides for a two offense-level reduction for certain defendants with zero criminal history points"; this "reduction may be applied retroactively." *United States v. Chichande*, 113 F.4th 913, 923 (9th Cir. 2024) (emphasis added); *see also* U.S.S.G. § 1B1.10, Application Note 7 (addressing application to Amendment 821; noting that "Part B, Subpart 1

---

[2] Section 994(o) provides in relevant part that "[t]he Commission periodically shall review and revise, in consideration of comments and data coming to its attention, the guidelines promulgated pursuant to the provisions of this section." 28 U.S.C. § 994(o).

[3] Section 994(u) provides: "If the Commission reduces the term of imprisonment recommended in the guidelines applicable to a particular offense or category of offenses, it shall specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced." 28 U.S.C. § 994(u).

[4] Section 1B1.10 addresses reductions in terms of imprisonment as a result of amended guideline ranges.

3

created a new Chapter Four guideline at §4C1.1 (Adjustment for Certain Zero-Point Offenders) to provide a decrease of two levels from the offense level determined under Chapters Two and Three for defendants who did not receive any criminal history points under Chapter Four, Part A and whose instant offense did not involve specified aggravating factors") (emphasis added).

As indicated above, the relevant guideline is § 4C1.1(a). That section provides as follows:

> (a) Adjustment. – If the defendant meets all of the following criteria:
>
> (1) the defendant did not receive any criminal history points from Chapter Four, Part A;
>
> (2) the defendant did not receive an adjustment under §3A1.4 (Terrorism);
>
> (3) the defendant did not use violence or credible threats of violence in connection with the offense;
>
> (4) the offense did not result in death or serious bodily injury;
>
> (5) the instant offense of conviction is not a sex offense;
>
> (6) the defendant did not personally cause substantial financial hardship;
>
> (7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (8) the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights);
>
> (9) the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense);
>
> (10) the defendant did not receive an adjustment under §3B1.1 (Aggravating Role); and
>
> (11) the defendant was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848;
>
> decrease the offense level determined under Chapters Two and Three by 2 levels.

U.S.S.G. § 4C1.1(a).

As Mr. Corey argues in his motion, the only factor that the government might have

1  contested here was (6) – *i.e.*, whether he personally caused substantial financial hardship.  But, in
2  its opposition, the government expressly concedes that "there is no evidence that [Mr. Corey's]
3  offenses caused the victims substantial financial hardship within the meaning of that term under
4  the Guidelines."  Opp'n at 7; *see also* Opp'n at 7 n.1 (noting that the government "reached out to
5  the victims of [Mr. Corey's] crimes [but] has not received information or evidence to indicate that
6  the victims suffered substantial financial hardship as that term is defined in the Guidelines").
7  Indeed, the government does not challenge Mr. Corey's position that he is, in fact, eligible for
8  sentence modification under § 4C1.1(a).
9       The Court agrees that, under the § 4C1.1(a) criteria, Mr. Corey is eligible for sentence
10 modification.  With a two-level decrease under § 4C1.1(a), that means Mr. Corey's adjusted
11 offense level is 29 (instead of 31), which means a sentence range of 87-108 months (instead of
12 108-135 months).  As noted above, the Court originally sentenced Mr. Corey to 108 months.  Mr.
13 Corey now asks to be sentenced at the low end of the range – *i.e.*, 87 months – which would be
14 consistent with the Court sentencing him at the low range when his offense level was 31.
15 C.    Section 3553(a) Factors
16      As noted above, the government does not assert that Mr. Corey is not eligible for a
17 reduction of sentence.  Instead, it argues that the § 3553(a) factors weigh against reducing the
18 sentence.
19      The § 3553(a) factors

> include the need to (1) deter criminal conduct, (2) protect the public from the defendant's future criminal conduct, and (3) provide the defendant with needed training, medical care, or correctional treatment.  Additional factors for consideration include (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, (3) the applicable Guidelines range, (4) the pertinent policy statements of the Sentencing Commission, (5) the need to avoid unwarranted sentencing disparities, and (6) the need to provide restitution to the victims.

25 *United States v. Sledge*, No. 24-11390, 2024 U.S. App. LEXIS 19787, at *1 (11th Cir. Aug. 7,
26 2024).
27      According to the government, Mr. Corey's sentence should remain at 108 months (which
28 is the highest end of the sentencing range based on an offense level of 29) for various reasons,

5

including that (1) he continued to engage in criminal conduct while out on bail for *Corey I*, then fled to Mexico, and then continued to engage in criminal conduct in Mexico; and (2) he has refused to accept responsibility and/or express remorse.

In response, Mr. Corey points out that the Court considered those very same factors when it originally sentenced him and decided to sentence him at the *low* end. Mr. Corey adds that the only new information the government now presents to the Court is that he had one incident with a prison guard in September 2023. He argues, however, that that information is countered by the fact that (1) it is old and (2) more recent information shows that he has undertaken significant rehabilitation efforts (*e.g.*, participating in the Residential Drug Abuse Program and taking a number of educational courses). *See generally* Mot. at 11-13. In addition, Mr. Corey notes that, based on information his original counsel obtained at the time of sentencing, the average sentence for an offense level of 27-30 is 64.2 months. *See* Docket No. 67-6, at 5 (expert report prepared for original sentencing) (containing chart providing information on average sentences for guilty-pleading, criminal history Category I defendants scored according to U.S.S.G. § 2B1.1 (using 2015 or later Guidelines Manual)). Even if the Court were to add on another year because he fled to Mexico, *see* Reply at 5 (noting that the median sentence for failure to appear or escape, which is "analogous to [his] flight to Mexico," is about a year), the total would still be less than the 87 months he is now asking for. Finally, Mr. Corey notes that Probation has now agreed with his request of 87 months. *See* Docket No. 118 (Sentence Reduction Investigation Report at 4) ("A sentence of 87 months in custody is recommended, which is the low-end of the recalculated guideline range. This appears appropriate given the defendant received a low-end guideline sentence at the original sentencing.").

Mr. Corey's central argument – *i.e.*, that he should be sentenced on the low end with the new offense level of 29 because the Court sentenced him to the low end with the old offense level of 31 – is problematic. During the original sentencing hearing, the Court expressly stated that, even if the offense level was around *27*, then it would do an *upward* departure to sentence him at 108 months based on its evaluation of the § 3553(a) factors. *See* Docket No. 80 (Tr. at 49-50) ("[I]f, in fact, the sort of de facto guideline range was more indicative of a 27 – accepting for the

6

1  moment a notion that there is a $600,000 loss – I would find that there is a basis to vary upward to
2  the 108 months from the 87 – 70 to 87 range that would otherwise apply because of the following
3  3553(a) factors that I have considered."). This included the following: Mr. Corey had engaged in
4  two sets of offenses (the conduct in *Corey I* and the distinct conduct in *Corey II*); the offenses
5  involved deliberate, repeated conduct; Mr. Corey fled to Mexico before he could be sentenced in
6  *Corey I* and charged with any new offenses; Mr. Corey continued his misconduct in Mexico; and
7  Mr. Corey failed to accept responsibility or express remorse as reflected by, *e.g.*, his failure to
8  return to the United States, his forced return to the country, and his attempt to lay blame on Mr.
9  Dill. *See* Docket No. 80 (Tr. at 50-54).

10  The Court, however, takes into consideration the new evidence presented by Mr. Corey
11  regarding his participation in the Residential Drug Abuse Program and a number of educational
12  courses. *See United States v. Lizarraras-Chacon*, 14 F.4th 961, 967 (9th Cir. 2021) ("In seeking
13  to ensure that the 'punishment fit the offender,' the Supreme Court explained that judges should
14  use 'the fullest information possible concerning the defendant's life and characteristics.' In a §
15  3553(a) factor analysis, such information should include, where applicable, post-sentencing and
16  post-offense rehabilitation."). This evidence supports an earnest attempt at rehabilitation. The
17  Court acknowledges the government's evidence that there was an incident in September 2023
18  involving a prison guard, but that conduct appears to be an outlier and the more recent conduct
19  supports Mr. Corey's sincere attempt to rehabilitate. Taking into account the rehabilitation
20  evidence, the Court shall reduce Mr. Corey's sentence from the original sentence of 108 months to
21  96 months.
22  / / /
23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

7

### III. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Mr. Corey's motion to reduce his sentence. The sentence is reduced from 108 months to 96 months.

**IT IS SO ORDERED**.

Dated: December 20, 2024

_____
EDWARD M. CHEN
United States District Judge